**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:                                                    :          Chapter 15
                                                          :
AWAL BANK, BSC,                                           :          Case No. 09-15923 (ALG)
                                                          :
            Debtor in a Foreign Proceeding.               :
-----------------------------------------------------------------x
In re:                                                    :          Chapter 11
                                                          :
AWAL BANK, BSC,                                           :
                                                          :          Case No. 10-15518 (ALG)
            Debtor.                                       :
-----------------------------------------------------------------x
CHARLES RUSSELL, LLP, LONDON, AS                          :
EXTERNAL ADMINISTRATOR OF AWAL                            :
BANK, BSC                                                 :
                                                          :
            Plaintiff,                                    :          Adv. Pro. No. 11-01535 (ALG)
                                                          :
v.                                                        :
                                                          :
HSBC BANK USA, N.A.                                       :
                                                          :
            Defendant.                                    :
-----------------------------------------------------------------x

## MEMORANDUM OF OPINION

A P P E A R A N C E S:

BROWN RUDNICK LLP
*Counsel to Charles Russell, LLP, London, as*
*External Administrator of Awal Bank, BSC*
Seven Times Square
New York, NY 10036
  By:   David J. Molton
        Sunni P. Beville
        Robert L. Harris
        William R. Baldiga

One Financial Center
Boston, MA 02111
  By:   Robert L. Harris
        Rebecca L. Fordon

Nicolas M. Dunn
PHILLIPS LYTLE LLP
*Counsel to HSBC Bank USA, National Association*
437 Madison Avenue, 34th Fl.
New York, NY 10022
  By:  William J. Brown
       David J. McNamara
       Allan L. Hill

-and-

3400 HSBC Center
Buffalo, New York 14203

UNITED STATES TRUSTEE
33 Whitehall Street, 21st Fl.
New York, NY 10004
  By:  Tracy Hope Davis
       Susan D. Golden

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

## <u>INTRODUCTION</u>

This opinion resolves certain aspects of a dispute between Charles Russell, LLP, London, as External Administrator (the "External Administrator") of Awal Bank, BSC ("Awal Bank" or the "Debtor"), a bank in insolvency proceedings in Bahrain, and HSBC Bank USA, National Association (together with its affiliates, branches and subsidiaries, "HSBC" or "Defendant"), one of Awal Bank's largest creditors. The principal issue for decision arises in connection with the External Administrator's adversary proceeding seeking to avoid or invalidate HSBC's set-off of $12,996,220.98 of the Debtor's money two weeks before the opening of insolvency proceedings in Bahrain. In other proceedings, the External Administrator seeks relief from one of the usual duties of a chapter 11 debtor—*viz.* to disclose the details of each creditor's claim. In the alternative, the External Administrator seeks authorization to file the amount of each creditor's claim under seal. HSBC contends (i) that the requested relief should be denied (ii) that the

chapter 11 case should be dismissed altogether; and (iii) whether or not the entire chapter 11 case is dismissed, the adversary proceeding should be dismissed for failure to state a claim on which relief can be granted. The United States Trustee has also objected to filing the details of each creditor's claim under seal.

Several of the matters addressed herein raise issues of first impression under chapter 15, including (i) the contours of a chapter 11 case brought subsequent to chapter 15 recognition and (ii) whether the External Administrator can sustain the Complaint against HSBC's motion to dismiss and pursue its efforts to avoid or invalidate the set-off. For the reasons set forth hereafter, (A) the chapter 11 case will not be dismissed; (B) it is appropriate in this case to modify § 521's disclosure requirements; and (C) the motion to dismiss the adversary proceeding will be denied as HSBC has not, on the pleadings and as a matter of law, demonstrated that (X) the External Administrator's § 553(b) action is untimely, (Y) Article 4A preempts the External Administrator's common law claims or (Z) the so-called discharge for value rule precludes the relief sought.

## BACKGROUND

### I.      The Bahrain Administration

By Resolution No. 38 of 2009, dated July 30, 2009, the Central Bank of Bahrain (the "CBB") placed Awal Bank into an administration proceeding. *See External Administrator's Motion to Approve Debtor's Schedules, Statement and Form of Operating Agreement* at ¶ 11, Case No. 10-15518 (Dkt. No. 48) (the "Revised Protocol Motion"). A short period later, the CBB appointed Charles Russell, LLP, an English law firm, to serve as the External Administrator of Awal Bank. *See Id.* Since Awal Bank was placed into administration, it has ceased to operate as a going concern. *See Stewart Hey Declaration* at ¶ 21, Case No. 09-15923 (Dkt. No. 5). Within

two years, the External Administrator must complete one of its obligations in the administration and "submit a petition to a Bahraini court, with the approval of the CBB, either for: (1) compulsory liquidation of the bank; or (2) termination of the administration and restoration of the bank to its management and shareholders." *Id.* at ¶ 22. The record does not show whether a decision to reorganize or liquidate Awal Bank has been made.

In the course of the administration in Bahrain, the External Administrator adopted a protocol for sharing information with creditors, including HSBC. *See External Administrator's Objection to HSBC's Motion to Dismiss Chapter 11* at ¶ 15, Case No. 10-15518 (Dkt. No. 58) (the "Objection to Motion to Dismiss"). Upon execution of a confidentiality agreement, creditors who have filed a proof of claim are invited to attend quarterly meetings with the External Administrator and the CBB for updates on the status of the administration of Awal Bank's assets. *Id.* All attendees may question the External Administer and the CBB. *Id.* There also exists an informal creditors' committee ("ICC") in the administration in Bahrain; HSBC is one of its five members. *Id.* It is undisputed that HSBC is one of Awal Bank's largest creditors, having a claim of approximately US $ 75 million without considering the set-off at issue in this case, and that HSBC has been an active participant in the administration in Bahrain, with access to all of the information available to creditors in that proceeding.

## II.     The Chapter 15 Case

On September 30, 2009, the External Administrator applied for recognition of the administration in Bahrain as a foreign main proceeding.[1] There were no objections and on October 27, 2009, an order recognizing the administration in Bahrain was entered in the above-captioned chapter 15 case. *See Recognition Order* at ¶ 9, Case No. 09-15923 (Dkt. No. 18). The

---

[1] A "foreign main proceeding" is defined as "a foreign proceeding pending in the country where the debtor has the center of its main interest." 11 U.S.C. § 1502(4).

External Administrator is the duly authorized foreign representative of Awal Bank. *See Id.* at ¶ 12.

###   III.     The Chapter 11 Case

On October 21, 2010, the External Administrator filed the above-captioned chapter 11 case. It is not disputed that the purpose of the filing was, to the extent necessary, to establish a statutory predicate for an action under U.S. law to avoid a set-off that HSBC had taken. On the day after the chapter 11 filing, the External Administrator sought relief from certain requirements of § 521 of the Bankruptcy Code, which provides that a debtor in a plenary case under the Bankruptcy Code must file a list of creditors and certain statements and schedules unless the court "orders otherwise." 11 U.S.C. § 521; *see External Administrator's Motion For An Order Establishing Protocol For Chapter 11 Case at* ¶ 5, Case No. 10-15518 (Dkt. No. 5) (the "Initial Protocol Motion"). At a hearing held on October 26, 2010, the Court declined to consider the requested relief until additional notice had been provided to creditors. The External Administrator subsequently withdrew the Initial Protocol Motion and notified the Court that further filings would be made. *See Notice of Withdrawal*, Case No. 10-15518 (Dkt. No. 24).

On January 5, 2011, Awal Bank filed a statement of financial affairs ("SOFA") and schedule of assets and liabilities that omitted some of the information typically provided pursuant to § 521 (Dkt. Nos. 36 and 37). In response to a request from the United States Trustee to supplement these documents, the External Administrator filed a motion seeking the Court's permission to file schedules that, in substance, omit the amount of the claims of individual creditors. *See Revised Protocol Motion* at ¶ 3. Amended Schedules that "disclose the existence of both U.S. and non-U.S. liabilities (including creditor name and address for each)," but do not "disclose specific creditor-by-creditor claim information, *i.e.*, the scheduled amount of the

creditors' claim" were filed on March 4, 2011.[2] *Id*. If the Revised Protocol Motion is denied and Awal Bank is compelled to provide the amount of each creditor's claim (the "Creditor Claim Information"), the External Administrator proposes to file such information under seal because the Creditor Claim Information was provided by the creditors under a promise of confidentiality in the administration in Bahrain.

The External Administrator contends that disclosure of the "foreign creditor-by-creditor claim amounts and foreign financial affairs . . . would directly conflict with the duties and procedures of the Foreign Main Proceeding." *Id.* at ¶ 5. The United States Trustee objected to the proposal, at least insofar as it sought to file the information under seal, contending that the External Administrator had failed to establish that the data it seeks to protect is the type of proprietary, commercial information covered by § 107(b)(1) of the Bankruptcy Code. The United States Trustee does not appear to object to the External Administrator's request for relief from some of the requirements of § 521. HSBC, by contrast, does object to the grant of relief from § 521 and the filing of Creditor Claim Information under seal.

### IV.    The Adversary Proceeding against HSBC

On February 24, 2011, the External Administrator commenced an adversary proceeding against HSBC in order to avoid and recover an allegedly improper set-off. Count I claims that under § 553(b) of the Bankruptcy Code, Awal Bank is entitled to recover $12,996,220.98 that HSBC purported to set-off against the $75,071,671.31 debt owed to HSBC or one of its affiliates by Awal Bank under a credit agreement. *See Complaint at ¶¶* 38-41, Case No. 11-01535 (Dkt. No. 1). The remaining counts assert common law causes of action against HSBC that also seek to recover the amount of the set-off; these counts are based on theories of (i) unjust enrichment, (ii) conversion, (iii) monies had and received, and (iv) mistake of fact. *Id.* at ¶¶ 42-53, 61-71. The

---

[2] The Debtor's amended schedules are filed as docket no. 67 in the chapter 11 case.

External Administrator also seeks the imposition of a constructive trust over the funds and a declaratory judgment that HSBC should immediately return the funds. *Id.* at ¶¶ 54-60, 72-77. HSBC has moved to dismiss the adversary proceeding.

## V.     Facts Relating to the Set-off

For purposes of the motion to dismiss, the following facts, pled in the Complaint, are presumed to be true. Awal Bank and HSBC entered into a Short Term Liquidity Facility Agreement (the "Credit Agreement") on May 19, 2008, providing an uncommitted overdraft facility of approximately $75 million. *See Complaint* at ¶¶ 25-31. On or about May 28, 2009, the Credit Agreement was terminated with approximately $75 million outstanding. *Id.* at ¶¶ 26-31. On or about June 26, 2009, HSBC served Awal Bank with a notice of default under the Credit Agreement and demanded payment in the amount of $75,071,671.31. *Id.* at ¶ 29.

On July 17, 2009, after a derivative contract was closed out with surplus funds owing to Awal Bank, Royal Bank of Scotland ("RBS") electronically transferred $12,996,220.98 to Awal Bank's deposit account at HSBC (the "Wire Transfer").[3] *Id.* at ¶¶ 32-34. According to the Complaint, the Wire Transfer was made in error, as Awal Bank had instructed RBS to transfer the surplus funds to Awal Bank's account with the Bank of Bahrain and Kuwait. *Id.* at ¶ 22. The External Administrator alleges that HSBC had actual or constructive notice that the Wire Transfer was sent to HSBC in error, and that RBS notified HSBC of the error on July 20, 2009 and repeatedly thereafter. *Id.* at ¶ 35.

HSBC contends in its papers that almost immediately upon receipt of the Wire Transfer, and prior to any discussions with Awal Bank or RBS, it applied the Wire Transfer to the indebtedness owed by Awal Bank under the Credit Agreement. *See HSBC's Memorandum of Law* at p.2. HSBC claims that it did not learn of Awal Bank's position—that the Wire Transfer

---

[3] The Wire Transfer appears to have been received by one of HSBC's New York branches.

was made in error—until after the funds had already been applied. *Id*. The External Administrator concedes that it received a "Notice of Application of Funds to Awal Bank" on or about August 7, 2009, but contends that it is a self-serving document that does not demonstrate that HSBC set-off the funds before being placed on notice that the Wire Transfer had been transmitted in error.

<u>**ANALYSIS**</u>

I.     **The External Administrator's Motion for Relief from Certain Requirements of § 521 of the Bankruptcy Code**

The External Administrator seeks relief in the pending chapter 11 case from some of the disclosures required by § 521 of the Bankruptcy Code, specifically, authority to omit the Creditor Claim Information or, in the alternative, to file such information under seal. 11 U.S.C. § 521(a)(1); *see Revised Protocol Motion* at ¶ 5. The relief sought by the External Administrator relates to and requires consideration of the nature and purpose of a plenary case filed by a foreign representative after obtaining recognition in a chapter 15 ancillary proceeding.

Chapter 15 of the Bankruptcy Code, which adopted the substance and most of the text of the United Nations Commission on International Trade Law ("UNCITRAL") Model Law on Cross-Border Insolvency (the "Model Law"), provides a comprehensive scheme for recognizing and giving effect to foreign insolvency proceedings. An administrator in a foreign insolvency proceeding who wishes to obtain judicial relief in the United States must ordinarily first obtain an order of recognition from the Bankruptcy Court in a chapter 15 proceeding. 11 U.S.C. §§ 1501, 1509(b), 1511(a), 1512, 1528. Once recognition has been granted to a foreign main proceeding, the foreign representative obtains certain relief as of right, including a stay of actions against the insolvent entity similar to the automatic stay. 11 U.S.C. § 1520. The foreign representative can also seek further relief in the chapter 15 case under § 1521 and "additional

8

relief" under § 1507. Although many provisions of the Bankruptcy Code can be accessed in a chapter 15 proceeding, the chapter 15 case remains ancillary to the foreign case, a U.S. insolvency "estate" is not created, and the foreign representative is relieved from many of the duties imposed on the estate representative in a chapter 7 or chapter 11 plenary case.

A recognized foreign representative can also file a plenary proceeding under chapter 7 or 11 regarding a debtor that is the subject of a chapter 15 case. 11 U.S.C. § 1511. However, with one exception, it is unclear how often a foreign representative would choose this option because of the extent of the relief available under chapter 15. This case involves that exception, however, as by statute the court cannot authorize a foreign representative, in a chapter 15 ancillary proceeding, to exercise the power to bring certain avoidance actions under the U.S. Bankruptcy Code, namely "relief available under sections 522, 544, 545, 547, 548, 550 and 724(a)." 11 U.S.C. § 1521(a)(7).

The External Administrator asserts that it can pursue § 553(b) claims in a chapter 15 case because § 553(b) is not listed as one of the excluded provisions in § 1521(a)(7). As further discussed below, there is a question whether the omission of § 553(b) from the enumerated exceptions in § 1521(a)(7) was a drafting error. The External Administrator appears to have filed the chapter 11 case as a measure of caution to remove any doubt as to its authority to pursue avoidance actions under U.S. law. In any event, since a chapter 11 plenary case has been filed and is pending together with the chapter 15 case, the relationship between the two proceedings must be established, and the question is raised whether and to what extent the purposes of chapter 15 justify providing relief from some of the usual requirements of a plenary case.

That brings us to the specific request at issue herein. The External Administrator asserts that limited disclosure is appropriate in this case because the chapter 11 case remains secondary

to the main case in Bahrain. It points out that (i) the effects of the chapter 11 case are even more restricted because Awal Bank's sole U.S. asset is the potential recovery on its claim against HSBC; (ii) a need exists to coordinate the chapter 11 and chapter 15 cases with the administration in Bahrain; (iii) comity and deference to the Bahrain administration's confidentiality protocol and distribution process justify the more limited disclosure; and (iv) limiting disclosure avoids unnecessary expense, especially in light of the availability of information in the administration in Bahrain. *See Revised Protocol Motion* at ¶ 34.

HSBC's initial position was that the Debtor's filings were "a parody of the disclosures required by and commonly filed in Chapter 11 bankruptcy cases" because they contained "almost no information about the Debtor's assets and liabilities, and list only one creditor," namely, HSBC. *HSBC's Motion to Dismiss Chapter 11 Case* (the "Motion to Dismiss") at ¶ 5. The External Administrator subsequently filed amended schedules that contain most of the information normally provided in such documents, except for the Creditor Claim Information. HSBC nevertheless asserts that there is no basis for the omission of this data and that Awal Bank's operating reports also lack certain information normally provided to the United States Trustee. *See Id.* at ¶ 8(b)(ii).[4]

The specific disclosure obligation at issue derives from § 521(a)(1) of the Bankruptcy Code, which provides, in relevant part:

> The debtor shall file (A) a list of creditors; and (B) unless the court orders otherwise (i) a schedule of assets and liabilities; . . . (iii) a statement of the debtor's financial affairs . . .

---

[4] It bears noting that the United States Trustee objected to the External Administrator's motion on the basis that there was "no showing that the creditor claim information should be protected under Section 107(b) of the Bankruptcy Code." *See UST Objection* (Dkt. No. 55). The United States Trustee has not sought to dismiss the chapter 11 case on the basis that Awal Bank's monthly operating reports are deficient.

11 U.S.C. § 521(a)(1). The list of creditors contains only names and addresses and is used for notice purposes. 4 Collier on Bankruptcy ¶ 521.06[2][c] (16th ed. 2011). The Creditor Claim Information is included in the schedules required by § 521(a)(1)(B), a subsection that allows a court to "order otherwise" with respect to disclosure. *See Hamilton v. Lanning*, 130 S.Ct. 2464, 2483 n.5 (2010) (Scalia, J., *dissenting*). Although the statute does not provide any guidance as to when a court should relieve a party from the disclosure requirements of § 521(a)(1)(B), courts in domestic cases have utilized this statutory authority to limit § 521(a)(1)'s requirements in a variety of circumstances. For example, this court often limits disclosure in prepackaged bankruptcy cases, where the general unsecured creditors are generally unimpaired and where the creditors affected by the chapter 11 case have already voted. *See, e.g., In re Metro-Goldwyn-Mayer Studios Inc.*, Case No. 10-15774 (SMB), *Order (A) Dispensing with the Requirements of Filing Schedules and Statements of Financial Affairs, (B) Pending the Waiver of Such Requirement, Granting Additional Time to File Schedules and Statements of Financial Affairs, (C) Authorizing Debtors to File Required Monthly Operating Reports on a Consolidated Basis, and (D) Establishing Certain Notice Procedures*, ¶ 2 (Dkt. No. 72) (Bankr. S.D.N.Y. Nov. 8, 2010); *In re CIT Group*, Case No. 09-16565 (ALG), *Order under 11 U.S.C. §§ 105 and 521 and Fed. R. Bankr. P. 1007 (I) Extending Time for Debtors to File Their Schedules of Assets and Liabilities and Statements of Financial Affairs, (II) Permanently Waiving Same Upon Confirmation of Debtors' Prepackaged Plan and (III) Waiving Requirements to File Equity List*, ¶¶ 3, 5 (Dkt. No. 49) (Bankr. S.D.N.Y. Nov. 3, 2009) (waiving the requirement to file schedules and statements, and a list of equity security holders).

Courts in this and other districts have also allowed debtors relief from the disclosure requirements contained in § 521 in other circumstances, particularly in the context of

§ 521(a)(1)(B)(iv)'s requirement to file "payment advices" or appropriate substitute evidence. *See, e.g., In re Tay-Kwamya*, 367 B.R. 422 (Bankr. S.D.N.Y. 2007); *In re Weinraub*, 351 B.R. 779 (Bankr. S.D. Fla. 2006); *In re Ackerman,* 374 B.R. 65 (Bankr. W.D.N.Y. 2007). For example, in the chapter 7 case of *In re Ackerman*, the court allowed the debtor to refrain from filing payment advices or substitute evidence, as mandated under 11 U.S.C. § 521(a)(1)(B)(iv). *Ackerman* evaluated the equities, balancing the importance of public disclosure in the bankruptcy context with the "austere consequences" of dismissing the case, and found that good cause existed to modify the debtor's obligations under § 521 "to assure the administration of assets for the benefit of creditors." *Ackerman,* 374 B.R. at 66, 68. Although the Court has authority to excuse the Debtor from its § 521(a)(1)(B) obligations altogether, in this case the Debtor has requested only limited relief.

Under the circumstances, significant factors weigh in favor of granting the requested order. Disclosure of the Creditor Claim Information would be disruptive to the administration in Bahrain because creditors provided that information under an expectation of confidentiality. Notwithstanding the filing of a plenary proceeding under chapter 11, the principles of cooperation and coordination embedded in chapter 15 are still applicable. Section 1509(b)(3) specifically directs that after recognition "a court in the United States shall grant comity or cooperation to the foreign representative." Even if there is no order of recognition, § 1525 provides that a court in a plenary case in the United States "shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee." Section 1528 further provides that when a domestic plenary case is opened subsequent to recognition of a foreign main proceeding, the effects of the U.S. case are

> restricted to the assets of the debtor that are within the territorial
> jurisdiction of the United States and, to the extent necessary to

> implement cooperation and coordination under sections 1525, 1526, and 1527, to other assets of the debtor that are within the jurisdiction of the court under sections 541(a) of this title, and 1334(e) of title 28, to the extent that such other assets are not subject to the jurisdiction and control of a foreign proceeding that has been recognized under this chapter.

11 U.S.C. § 1528; *see also* Leif M. Clark, *Ancillary and Other Cross-Border Insolvency Cases Under Chapter 15 of the Bankruptcy Code*, (LexisNexis 2008) at § 12[1][a] (to the extent possible, the administration of a debtor's affairs should be centralized in the foreign main proceeding and other cases should be coordinated with the main case).

Moreover, HSBC has not identified any specific need at this stage of the case for the disclosure it advocates. As HSBC appears to be the only U.S. creditor of Awal Bank, disclosure in the chapter 11 case of the confidential Creditor Claim Information would appear to be of no use to other U.S. parties. As for HSBC, as the External Administrator has pointed out, it enjoys privileged access to certain confidential information because it is significantly involved in the administration in Bahrain and serves as a member of the ICC. *See Revised Protocol Motion* at ¶¶ 15-16.[5]

It is recognized that the restrictions in § 1521(a)(7)—limiting a foreign representative's authority to access the specified avoidance provisions in a chapter 15 ancillary proceeding—and the corresponding grant of authority in § 1523(a)—granting a foreign representative authority to access chapter 5's avoidance provisions in a plenary case—are not standard provisions carried over into chapter 15 from the Model Law. Congress adopted this limitation because of the U.S. UNCITRAL delegation's concerns that U.S. avoidance principles should become available to a foreign representative only in a plenary proceeding where the court could give full consideration

---

[5] The ICC consists of five of the largest creditors in the Foreign Main Proceeding and serves as a sounding board through which the External Administrator and the Central Bank of Bahrain, the government entity responsible for regulating the financial services industry in Bahrain, receive creditor feedback regarding various case administration issues. *See Revised Protocol Motion* at ¶¶ 11, 15.

to the relevant choice of law issues. As the Fifth Circuit explained in *Fogerty v. Petroquest Resources, Inc. (In re Condor Ins. Ltd.)*, 601 F.3d 319 (5th Cir. 2010), quoting a Report of the UNCITRAL Working Group, "The drafters of Chapter 15, responsive to the concerns raised at the UNCITRAL debates, confined actions based on U.S. avoidance law to full Chapter 7 and 11 bankruptcy proceedings—where the court would also decide the law to be applied in the distribution of the estate." 601 F.3d at 326-27, citing *In re Maxwell Commc'n Corp.*, 93 F.3d 1036 (2d Cir. 1996). Thus, the initial proposal of the External Administrator, that the chapter 11 case be treated in all respects as no different from the chapter 15 ancillary case and that all of the requirements of a chapter 11 case be dispensed with because of the pendency of a main case in Bahrain, was inappropriate.

On the other hand, the limited relief that the External Administrator seeks does not affect the Court's ability to consider choice of law questions or any other issues that might affect the interests of creditors in the United States and elsewhere, including HSBC, in connection with the Complaint. The exact contours of the chapter 11 case need not be determined at this stage. However, for the reasons stated above, good cause exists to modify the Debtor's obligations under § 521(a) and to permit the External Administrator to file the schedules of assets and liabilities, a SOFA and operating reports without including the Creditor Claim Information.[6]

---

[6] HSBC also complains about the information contained in the External Administrator's monthly operating reports. Monthly operating reports are not required by § 521, but by 11 U.S.C. § 1107(a), which directs, among other things, that the debtor in possession perform the functions and duties of a chapter 11 trustee under § 1106(a)(1). In turn, § 1106(a)(1) references § 704, which requires the trustee for an operating debtor to file "periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States Trustee or the court requires." As the United States Trustee appears to have no objection to the External Administrator's request to modify the disclosure requirements and the statute clearly provides this Court with discretion to specify what information must be disclosed, for the purposes of this decision, we will treat the request for relief as a request for relief from § 1107's usual requirements. If there are grounds for any party to request further information as the case progresses, they are free to file an appropriate motion after conferring with the U.S. Trustee.

Because relief under § 521(a)(1) is granted, the Court need not consider whether the information could be sealed pursuant to § 107(b) of the Bankruptcy Code.

## II.        HSBC's Motion to Dismiss the Chapter 11 Case

HSBC also moves to dismiss Awal Bank's chapter 11 case altogether, asserting that the External Administrator acted in bad faith by "a pattern of failing to file even the most basic disclosure documentation in accordance with the Bankruptcy Code," and that it appears "to have neither the intention nor the ability to file a confirmable chapter 11 plan." *Motion to Dismiss* at ¶ 1. As the moving party, HSBC has the burden of demonstrating that cause exists for dismissal. *See In re FRGR Managing Member LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009).

HSBC relies on § 1112(b) of the Bankruptcy Code, which provides that, subject to certain exceptions not relevant here:

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . .

Section 1112(b)(4) then sets forth a non-exclusive list of factors constituting "cause" for dismissal. HSBC suggests that "cause" to dismiss the chapter 11 case exists for at least three of the enumerated reasons, including that (i) the chapter 11 case is causing a substantial or continuing loss to or diminution of the estate, and the Debtor is not reasonably likely to be rehabilitated; (ii) Awal Bank has failed to timely satisfy its filing and reporting requirements; and (iii) Awal Bank has failed "to file a disclosure statement or to file or confirm a plan" within the allowed time. 11 U.S.C. §§ 1124(a)(4)(A), (F), and (J). None of these apply at this stage of the case.

As to the claim that there has been a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," the filing costs of the

chapter 11 case have been minimal relative to the approximate $13 million the External Administrator is attempting to recover by pursuing its § 553 and common law claims against HSBC. All other costs are related to HSBC's motion practice. In any event, it is primarily a question for the administration in Bahrain whether the costs of pursuing HSBC are worthwhile.

HSBC has made several arguments why a reasonable likelihood of rehabilitation does not exist, but, at the time the chapter 11 case was filed, the External Administrator apparently had time remaining under Bahrain law to determine whether Awal Bank should be liquidated or reorganized. A chapter 11 debtor may confirm a liquidating plan if reorganization is not feasible. 11 U.S.C. § 1129(a)(11). HSBC asserts that the Debtor has "previously stated it has no intention of filing a Chapter 11 plan" and has refused to commit to file such a plan, but the filing of a plan is a matter to be considered later in the case, and the Debtor will be excused from confirming a plan only by showing cause and after notice and a hearing. See 11 U.S.C. § 1112(b); Bankruptcy Rule 1017(a). At this stage of the case, it would be inappropriate for the Court to make a finding of an "absence of a reasonable likelihood of rehabilitation."

HSBC next contends that the chapter 11 case should be dismissed because Awal Bank has not satisfied all of the requirements of § 521. As discussed above, the Revised Protocol Motion is granted, and this ground is now moot.

Finally, HSBC makes the incredible argument that "cause" exists to dismiss the chapter 11 case because Awal Bank has failed to "file a disclosure statement, or to file or confirm a plan, within the time affixed by this title or by order of the court." *See* Motion to Dismiss at ¶ 8, citing 11 U.S.C. § 1112(b)(4)(J). No order has set a plan deadline, and although the initial exclusivity period for the Debtor to file a chapter 11 plan under § 1121(b) of the Bankruptcy Code was scheduled to expire on February 18, 2011, on February 17, 2011, this Court extended the

exclusivity period to August 17, 2011. (Dkt. No. 50). Since the prospect of filing a plan or disclosure statement appears to depend entirely on the success of the case against HSBC, it is absurd for HSBC (the target defending against the case, as is its right) to contend that the delay it has occasioned should somehow cause a forfeiture of the cause of action.[7]

In any event, the External Administrator states in his opposition to HSBC's motion that it "would seek Court approval and confirmation of a plan that would–per Sections 1525, 1526 and 1527 as incorporated within Section 1529 and as applicable to chapter 11 cases filed under to [sic] Section 1528–coordinate, *inter alia*, distribution of any realized United States assets in a manner in accordance with the provisions of chapter 11 and 15 and the Foreign Main Proceeding and that would, upon approval by this Court, enable any realized United States assets to be administered by the External Administrators in the Foreign Main Proceeding." *See Objection to Motion to Dismiss* at ¶ 35. It is hard to parse this language, but in all events it is premature to speculate on a distribution scheme wholly contingent on a recovery against a well-represented defendant.

HSBC argues that there is "absolutely no authority from this Court or under the Bankruptcy Code or applicable law to distribute Chapter 11 assets to foreign creditors who do not have U.S. allowed claims" or to modify any of the provisions of chapter 11 in order to accommodate the fact that this chapter 11 case was filed by the External Administrator of a recognized foreign proceeding. *Motion to Dismiss* at ¶¶ 14-15. In fact, there was such authority under 11 U.S.C. § 304, the predecessor to chapter 15.[8] In *Matter of Axona Int'l Credit & Commerce Ltd.*, 88 B.R. 597 (Bankr. S.D.N.Y. 1988), *aff'd*, 115 B.R. 442 (S.D.N.Y. 1990),

---

[7] On July 25, 2011, the External Administrator filed a motion seeking a further extension of the exclusivity period for filing a plan and obtaining acceptances. (Dkt. No. 93). The External Administrator contends that it is not practicable to prepare a chapter 11 plan until the Debtor's set-off claim against HSBC has been determined. A hearing is currently scheduled on the External Administrator's motion for August 11, 2011.
[8] Section 304 was repealed when chapter 15 was adopted.

*appeal dismissed*, 924 F.2d 31 (2d Cir. 1991), a plenary proceeding, after being used to recover a preference, was dismissed in favor of an ancillary case and the proceeds remitted to the foreign jurisdiction for distribution there. It is premature to consider whether *Axona* should be followed in light of the adoption of chapter 15, or whether the principle of universal cross-filing, which is recognized in other cross-border insolvency legislation, should be utilized in this case.[9] It is also premature to speculate on the terms of a distribution in Bahrain. *See In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 629 (Bankr. S.D.N.Y. 2010) (court refused to release funds before court in Bahrain had established how creditors would be treated in a distribution there). In any case, cause does not exist to dismiss the chapter 11 proceeding.

## III.     HSBC's Motion to Dismiss the Adversary Proceeding

### A.  Section 553 Issues

HSBC has also moved to dismiss the adversary proceeding. Its motion is based on two contentions: (i) that § 553(b) is inapplicable because the relevant set-off occurred outside the 90-day statutory look-back period provided in that subsection; and (ii) that the common law claims in the Complaint are pre-empted by the Uniform Commercial Code or defeated by the so-called "discharge for value" rule. As with any motion to dismiss, all of the well-pled allegations of the Complaint and all reasonable inferences that may be drawn therefrom must be accepted as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A Complaint need only set forth "a short plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is given fair notice of the plaintiff's claim and the basis therefor. *Bell Atlantic Corp. v. Twombly*,

---

[9] Foreign creditors have an absolute right to file claims in U.S. proceedings. 11 U.S.C. §§ 1513, 1514. The principle that claims of all creditors in a foreign proceeding can and should be filed by the foreign administrator in a plenary case pending in another jurisdiction has been advocated. See Jay Lawrence Westbrook, Universal Priorities, 33 TEX. INT'L L. J. 27, 30 (1998), noting the use of such principle in the European Insolvency Regulation. *See* Art. 32, European Union: Convention on Insolvency Proceedings, Nov. 23, 1996, 35 I.L.M. 1223. In *In re Griffin Trading Co.*, 270 B.R. 905 (N.D. Ill. 2001), *aff'g* 270 B.R. 883 (Bankr. N.D. Ill. 2001), the foreign administrator did not timely seek authority to file such a "class" claim, and his belated effort to do so was rejected.

550 U.S. 544, 555 (2007). Detailed factual allegations are unnecessary, and a Complaint that states a plausible claim for relief will survive a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1949.

### 1. *Is the External Administrator's § 553(b) Claim Untimely?*

HSBC contends that the Complaint should be dismissed as untimely because the chapter 11 petition date is the only appropriate reference date for § 553(b)'s look-back period, and the chapter 11 petition was filed long after that period had expired. Section 553(b) of the Bankruptcy Code provides that:

> if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within <u>90 days before the date of the filing of the petition</u>, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—(A) 90 days before the date of the filing of the petition; and (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

11 U.S.C. § 553(b)(1) (*emphasis added*). HSBC acknowledges that the petition under chapter 15 was filed within 90 days of the set-off.[10] It also concedes that, as amended in 2010, 11 U.S.C. § 101(42) defines the term "petition" as a petition under chapter 15 as well as a petition under the other chapters of the Code.[11] However, HSBC reasons that "the petition" in § 553(b) must refer to the chapter 11 petition date because avoidance relief is only available in a chapter 11 case.

The External Administrator has two responses. First, it argues that § 1527(a)(7), which provides that relief under most U.S. avoidance provisions cannot be granted in a chapter 15 case,

---

[10] The parties dispute whether the set-off occurred on July 17, 2009 or on another date "prior to August 7, 2009." Although this may be relevant to the question whether HSBC had notice that the Wire Transfer was made in error, it is seemingly irrelevant to the question of the reference date for the look-back period. There is no dispute that if the chapter 15 petition date is used, the set-off occurred within the 90-day look-back period. *See HSBC Memorandum of Law* at 6.

[11] Section 101(42) was amended by the Bankruptcy Technical Corrections Act of 2010 (the "2010 Act") to reflect the enactment of chapter 15 and to correct the prior reference in the statute, which was § 304, to § 1504. *See* Pub. L. No. 111-327, 124 Stat. 3557 (2010). The External Administrator contends that because the 2010 Act made only "technical corrections," there is no issue that the new law should be applied retroactively. *Plaintiff's Opposition to HSBC Bank USA's Motion to Dismiss the Complaint* at p. 8, n. 4; *see Brown v Thompson*, 374 F.3d 253, 259 (4th Cir. 2004). HSBC has not suggested that the 2010 Act lacks retroactive applicability.

does not list § 553(b), and that the Court has authority to grant relief under § 553(b) in a chapter 15 case.[12] Second, the External Administrator contends that the chapter 15 filing date would be, in any event, the appropriate date for the commencement of the look-back period for an avoidance action commenced within a related chapter 11 case.

2. *Can a Cause of Action Predicated on § 553(b) Be Brought in a Chapter 15 Case?*

The External Administrator contends that an avoidance proceeding under § 553(b) *can* be brought in a chapter 15 case without opening a plenary chapter 7 or chapter 11 proceeding. This position is based on the "plain wording" of § 1521(a)(7); as quoted above, that section permits the court to grant the foreign representative "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550 and 724(a)." Although most of the avoidance provisions are included, two such provisions are not—§ 553 and § 549.

There is no reported authority explaining why § 553(b) was omitted from § 1521(a)(7). The legislative history simply states, "This limited grant of standing in section 1523 does not create or establish any legal right of avoidance nor does it create or imply any legal rules with respect to the choice of applicable law as to the avoidance of any transfer or obligation. The court will determine the nature and extent of any such action and what national law may be applicable to such action." Although this passage speaks broadly of U.S. "avoidance law" as being within the exclusion, and does not distinguish between the various avoidance provisions of the Bankruptcy Code, there is no clear indication that the omission of § 553(b) was a drafting

---

[12] In full, § 1521(a)(7) provides that "(a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including . . . (7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)."

error, as HSBC contends. It would be hard to argue that the drafters simply forgot that § 553(b) is similar to an avoidance provision, as § 553(b) is listed in § 1523(a), which provides that a foreign administrator, after recognition, does have standing to initiate certain enumerated actions, including those under § 553(b).[13] Moreover, § 549, which permits an estate representative to avoid a post-petition transfer, is also omitted from § 1521(a)(7). It cannot be argued that omission of § 549 was a drafting error, as § 1520(a)(2) expressly provides that it applies in a chapter 15 case. *See In re Loy*, 432 B.R. 551 (E.D. Va. 2010) (discussing the avoidance of an unauthorized, post-chapter 15-petition transfer).

The plain meaning of the statutory language must ordinarily govern when they do not lead to an absurd result. *See Lamie v. United States Trustee*, 540 U.S. at 538, 542. A determination that a recognized foreign representative can be afforded the power in a chapter 15 ancillary case to avoid a preferential set-off, but not to avoid most other prejudicial transfers, such as a fraudulent conveyance or a preference, does not lead to an absurd result. Indeed, § 553 is a different provision than §§ 547 and 548. Section 553 provides for the recovery of property, not just the avoidance of a transfer. *See* the distinction made in § 502(d) of the Bankruptcy Code, where it is stated that property is "recoverable" under § 553, but "avoidable" under §§ 547 and 548. Further, § 553 recognizes, in the first instance, a limited right of set-off that is, in turn, based on applicable non-bankruptcy law. *See Official Comm. Of Unsecured Creds. v. Mfr. And Traders Trust Co. (In re Bennett Funding Group, Inc.)*, 146 F.3d 136, 138-39 (2d Cir. 1998). Since § 553 requires the court to analyze the applicable non-bankruptcy law before dealing with a set-off, one of the concerns of the U.S. UNCITRAL delegation—that U.S. avoidance law not be applied routinely without consideration of choice of law issues—is mitigated. In addition, courts in the United States have discretion to refuse to recognize certain prepetition set-offs,

---

[13] Section 1523(a) is further discussed below.

based on applicable law. *See In re Bennett Funding Group, Inc.*, 146 F.3d at 140 ("allowance of a setoff is a decision that lies within the sound discretion of the bankruptcy court"); *see also U.S. v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983) (application of § 553 lies within the "broad equitable discretion of courts in recognizing setoff rights defined by the common law"); *In re Lehman Bros. Holdings Inc.*, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009). By contrast, it cannot be said that a court has discretion to avoid a preference without a clear statutory basis.[14]

Based on the foregoing, relief pursuant to § 553(b) is not prohibited by § 1521(a)(7). The chapter 15 case was concededly filed within 90 days of the set-off. Accordingly, HSBC's motion to dismiss the adversary proceeding, insofar as the Complaint seeks a declaratory judgment as to the availability of § 553(b) relief in a chapter 15 case, is denied.

### 3. *Can the Chapter 15 Filing Date Be Used in a Subsequent Chapter 11 Case?*

Despite concluding above that a proceeding under § 553(b) can be brought in a chapter 15 ancillary proceeding without the commencement of a separate plenary case under the Bankruptcy Code, the Court nevertheless addresses the External Administrator's second contention: that the chapter 15 filing date should be used in as the reference date in a § 553(b) action brought in a subsequently filed chapter 11 case. In contrast, HSBC contends that the External Administrator's  § 553(b) action is untimely because the chapter 11 petition date is the only possible reference date and the chapter 11 petition was filed more than 90 days after the set-off at issue.

---

[14] At this point, there is no need to determine the precise relief that the External Administrator would be entitled to, taking into consideration the fact that § 550 is included as one of the provisions that a foreign representative cannot access without commencing a plenary case under chapter 7 or chapter 11. Even if § 550 were not available but was deemed necessary in order for the External Administrator to be able to recover a set-off under § 553(b), the External Administrator might still be able to obtain effective relief. For example, if the set-off were declared unlawful under U.S. law, the External Administrator might be able to deduct the amount HSBC seized from any distribution it becomes entitled to in the main case in Bahrain, or take other action in Bahrain to similar effect. This form of relief would be consistent with U.S. law; under § 502(d) of the Bankruptcy Code, a claim is disallowed until the transferee repays an avoided transfer.

As noted above, Bankruptcy Code § 101(42) defines "petition" as a "petition filed under section 301, 302, 303, or 1504 of this title, as the case may be, commencing a case under this title." 11 U.S.C. § 101(42). Thus, "petition" as used in § 553(b) and quoted above, includes the chapter 15 petition date as the relevant date for the start of the look-back period. Nevertheless, as HSBC sees it, (i) § 553(b) refers to "the" petition and not "a" petition, and (ii) the chapter 11 petition date is "the" petition date because it is only in the chapter 11 case that the § 553(b) proceeding can be brought.[15]

The construction of the statute urged by HSBC puts the powers of a foreign representative in a procedural straightjacket that is inconsistent with the statute's language and purpose. A foreign representative can open a plenary case after obtaining an order of recognition by filing "a" petition, §§ 1511(a)(2), 1511(b), but it is not a new case. Rather, the it is merely one in which the debtor takes on new duties and responsibilities as the debtor in a chapter 7 case or the debtor in possession in a chapter 11 case. HSBC argues that the External Administrator cannot properly be relieved of any responsibilities as a chapter 11 debtor because, "the Debtors made the choice to cross the threshold into a case under another title and submit itself to the full bankruptcy system." *HSBC's Sur-Reply* at p. 7.

However, as determined above, the External Administrator can be relieved of certain chapter 11 responsibilities. HSBC is correct that a foreign representative cannot mix and match its powers or its duties, and the plenary proceeding would seem to take priority in many respects. For example, while the chapter 11 case is pending, there would seem no reason for the foreign representative to seek to exercise powers in the chapter 15 case that can be accessed as a matter of right in the chapter 11 case. Nevertheless, the precedence of a plenary proceeding does not

---

[15] Again, this assumes that a § 553(b) proceeding could <u>not</u> be brought in a chapter 15 ancillary case and that the foreign representative is required to commence a plenary case to access that power.

rule out use of the chapter 15 petition date as the relevant look-back date for the External Administrator's § 553(b) action. Indeed, the opening of a plenary proceeding after recognition in a chapter 15 case is very much like conversion of a case from one chapter to another, or at least the "functional equivalent" of a conversion. *See In re Premier General Holdings, Ltd.*, 427 B.R. 592, 602 (Bankr. W.D. Tex. 2010). To the extent the chapter 11 case were viewed as a converted case, § 348 of the Bankruptcy Code would be directly applicable, providing that, with exceptions not relevant here, "conversion of a case from a case under one chapter of this title to a case under another chapter of this title . . . does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348. The purpose of that provision is to preserve an earlier date for starting the look-back period for avoidance purposes. *See Vogel v. Russell Transfer, Inc.*, 852, F.2d 797, 798-99 (4th Cir. 1988).

Admittedly, the filing of a new plenary petition is not a "conversion" because the chapter 15 case remains open, and § 348 does not apply literally. However, the principle of preserving a look-back filing date for avoidance purposes is also respected where multiple proceedings regarding the same debtor have been filed. In *Premier General*, the question was whether to dismiss an involuntary petition after the filing of a voluntary petition by the debtor who was the subject of the involuntary case. The Court held that it would not be necessary to litigate the propriety of the involuntary petition, that the voluntary filing would be treated as consent to the involuntary, that the cases would be consolidated, and that the look-back period in the consolidated cases would be calculated from the date the involuntary petition was filed, "thereby maximizing the look-back period for purposes of chapter 5 avoidance actions, and minimizing the possibility of wrongful transactions . . ." 427 B.R. at 600.[16]

---

[16] There are relatively few cases that have grappled with similar issues, but several decisions are helpful. For example, in *In the Matter of Descorp, Inc.*, Civil A. No. 91-3554, 1992 WL 29833 (E.D. Penn. Feb. 12, 1992), over

The Court in *Premier General Holdings* found that its power to preserve a filing date for look-back purposes was inherent in a court's ability to consolidate cases under Bankruptcy Rule 1015(a), which provides, "If two or more petitions by, regarding, or against the same debtor are pending in the same court, the court may order consolidation of the cases." Consolidation under Rule 1015(a) is not purely administrative and, like substantive consolidation, "affects the substantive rights of the creditors of different estates." 1983 Advisory Committee Note to Rule 1015; s*ee Matter of Evans Temple Church of God In Christ and Community Center, Inc.*, 55 B.R. 976, 982 (Bankr. N.D. Ohio 1986) (consolidation pursuant to Rule 1015 made it appropriate to measure assets and liabilities identically for purposes of the consolidated proceeding).[17]

The Court does not here prejudge the outcome of a motion to consolidate should the External Administrator file one. However, the 2010 Advisory Committee Note to Rule 1015

the objection of the petitioning creditors, the District Court affirmed the dismissal of an involuntary petition filed 19 days prior to the debtor's voluntary petition. The objecting creditors' sole concern in *Descorp* was "the preservation of the earlier filing date" in order to maximize the look-back period for purposes of chapter 5 avoidance actions. *Id.* at *1. Unlike the instant matter, however, the petitioning creditors in *Descorp* were unable to point to a specific transaction they expected to challenge if the earlier petition date were used. The District Court affirmed the dismissal on the basis that: "(1) the creditors have failed to show any prejudice, (2) the bankruptcy court's order expressly allows for further filing of motions if prejudice is discovered, (3) the voluntary action has been converted to Chapter 7 [the same chapter pursuant to which the involuntary case had been brought], and (4) the debtor has agreed to use the earlier filing date of November 28, 1990 and to consolidate the cases." *Id.* at *4. It cited several cases under the Bankruptcy Act in which the right of creditors to recover preferences based on an earlier filed involuntary petition had been preserved. *See Int'l Silver Co. v. New York Jewelry Co.*, 233 F. 945 (6th Cir. 1916); *In re Anderson Motor Co.*, 18 F.2d 1001 (N.D. Tex. 1927); *see also In re Lamb*, 40 B.R. 689, 691 (Bankr. E.D. Tenn. 1984) (voluntary case filed after involuntary case allowed to proceed but only in a way that protected the rights of the petitioning creditors).

[17] Although consolidation can affect creditors' rights, where the debtors are the same, the estates differ only in changes in property during a gap period between the cases and consolidation should not "significantly or adversely affect the interests of creditors." *In re Premier General Holdings, Ltd.*, 427 B.R. at 601. HSBC contends that use of the chapter 15 petition date as the relevant look-back date "would create severe mechanical statutory problems if actually employed," because it would allow the External Administrator to recover a setoff that occurred in the 90 days prior to the chapter 15 petition date but not if the setoff had occurred in the gap period between the chapter 15 and chapter 11 filing dates. *See HSBC's Memorandum of Law* at p. 9. HSBC ignores the fact that the External Administrator would be able to recover such funds pursuant to § 549, which allows a trustee to avoid a post-petition transfer of property of the estate and applies in a chapter 15 case. *See In re Loy*, 432 B.R. 551 (E.D. Va. 2010). Moreover, the courts have held that action in the United States in derogation of a pending foreign insolvency case is void and of no effect. *See Cunard S.S. Co. v. Salen Reefer Srvcs. AB*, 773 F.2d 452 (2d Cir. 1985) (pre-chapter 15 case; attachment void in light of earlier insolvency filing in Sweden); *In re Atlas Shipping A/S*, 404 B.R. 726 (Bankr. S.D.N.Y. 2009) (Chapter 15 case; attachment subsequent to Danish filing treated as void). Any set-off during HSBC's "gap period" would have taken place subsequent to the filing in Bahrain and should be considered void under U.S. law.

makes it clear that, as the Rule was amended in 2010, "the court's authority to consolidate cases when more than one petition is filed includes the authority to consolidate cases when one or more of the petitions is filed under chapter 15." Consolidation of the cases and use of the chapter 15 petition date as the reference date for a § 553 avoidance action would carry out the purpose of avoidance actions, *viz.* to ensure that the goal of equality of distribution will be achieved, *Beiger v. IRS*, 496 U.S. 53, 54 (1990), as well as one of the purposes of chapter 15, which is the "protection and maximization of the value of the debtor's assets." 11 U.S.C. § 1501(a)(4).

Use of the chapter 15 petition date also gives greater effect to § 1523(a) of the Bankruptcy Code, which provides that, "Upon recognition of a foreign proceeding, the foreign representative has standing in a case concerning the debtor pending under another chapter of this title to initiate actions under sections 522, 544, 545, 547, 548, 550, 553, and 724(a)." By affording standing to the foreign representative, § 1523(a) gives the foreign representative the power and authority of a trustee under § 553 as well as the other avoidance provisions of the Bankruptcy Code. Although it is not contended that § 1523(a) provides the External Administrator with rights that do not accrue under other provisions of the law,[18] one of the limited but important purposes of § 1523(a) is to place the foreign representative in the shoes of a chapter 7 or chapter 11 trustee for the purpose of pursuing the enumerated avoidance claims.

The standing of a foreign representative to use U.S. avoidance law, which is expressly dependent on recognition and filing a plenary case thereafter, would be impeded if the chapter 15 petition date were not the operative reference date because the process of obtaining chapter 15 recognition can take substantial time. *See, e.g., In re Loy*, 432 B.R. 551 (E.D. Va. 2010) (order

---

[18] The legislative history of § 1523(a) states, "This limited grant of standing in section 1523 does not create or establish any legal right of avoidance nor does it create or imply any legal rules with respect to the choice of applicable law as to the avoidance of any transfer or obligation. The court will determine the nature and extent of any such action and what national law may be applicable to such action."

granting recognition of the foreign main proceeding entered almost two months after the petition was filed); *In re British Am. Ins. Co., Ltd.,* 425 B.R. 884 (Bankr. S.D. Fla. 2010) (recognition granted more than five months after petition was filed). Since the statute appears to require an order of recognition before the foreign representative can file a plenary voluntary case, use of the date of a subsequently filed chapter 7 or 11 petition as the reference date for avoidance purposes would necessarily shorten the look-back period for proceedings based on U.S. law. In some cases, such as *In re British Am. Ins. Co., Ltd.*, it would render a nullity any right to use U.S. law to avoid transactions in the nature of a preference, and it would also "incent and encourage" potential targets of an avoidance action to delay the chapter 15 recognition process in an attempt to run out a look-back period before a plenary petition could be filed. *See Plaintiff's Opposition to HSBC's Motion to Dismiss the Complaint* at p. 18. It would also limit a foreign representative's right to take discovery under § 1521(a)(4), because every day spent investigating a potential cause of action would be a another day of the look-back period slipping away.

For the reasons set forth above, even if it is assumed that a § 553(b) action can only be filed in a plenary case, the motion to dismiss the Complaint as untimely is denied, and the External Administrator has leave to move to consolidate the chapter 15 and chapter 11 cases.

B. <u>Common Law Issues</u>

*1. Article 4A of the UCC*

As noted above, the External Administrator asserts claims in the Complaint based on allegations of (i) unjust enrichment, (ii) conversion, (iii) monies had and received, and (iv) mistake of fact; and seeks to impose a constructive trust on the purportedly set-off funds or have the Court issue a declaratory judgment that HSBC should return the funds to the External Administrator. HSBC asserts that these common law claims are governed by Article 4A of the

Uniform Commercial Code ("UCC") because they are premised on disputes arising from a wire transfer.[19] HSBC further contends that, under § 4A-209(b)(2) of the UCC, the Wire Transfer was completed when HSBC accepted it and exercised its right of set-off, which it claims occurred on July 17, 2009.[20] HSBC argues that these general provisions conclusively cut off the common law rights of the External Administrator to challenge any aspect of the Wire Transfer, and requests the Court dismiss the common law claims in the Complaint.

UCC Article 4A was designed to provide clear rules for parties to follow with respect to a wire transfer, referred to as an electronic funds "transfer." *See Banco de la Provincia de Buenos Aires v. BayBank Boston N.A.*, 985 F.Supp. 364, 367 (S.D.N.Y. 1997). It sets out "a detailed scheme for analyzing the rights, duties and liabilities of banks and their customers in connection with the authorization and verification of payment orders. Analysis of a funds transfer under these sections results in a determination of whether or not the funds transfer was 'authorized,' and provides a very specific allocation of loss." *See Hunter v. Citibank, N.A.*, Case No. 09-2079, 2010 WL 2509933 (N.D. Cal. Feb 3. 2010). However, Article 4A of the UCC displaces common law claims only to the extent that such common law claims are inconsistent with the UCC provisions. As the Court stated in *Sheerbonnet, Ltd. v. American Express Bank, Ltd*, 951 F. Supp. 403, 407-8 (S.D.N.Y. 1996), quoting N.Y. U.C.C. § 4A-102 Official Comments, the "exclusivity of Article 4-A is deliberately restricted to 'any situation covered by particular provisions of the Article.' Conversely, situations not covered are not the exclusive province of the Article." Where common law or equitable principles are not inconsistent with specific provisions of Article 4A,

---

[19] The parties agree that New York law applies to the instant dispute and refer to Article 4A as adopted in New York.

[20] § 4A-209(b) provides that acceptance of a payment order by a bank such as HSBC occurs upon the "earliest of the following times: (1) when the bank (i) pays the beneficiary as stated in Section 4A-405(a) or 4A-405(b), or (ii) notifies the beneficiary of receipt of the order or that the account of the beneficiary has been credited . . .; (2) when the bank receives payment of the entire amount of the sender's order pursuant to Section 4A-403(a)(1) or 4A-403(a)(2) . . ."

they are not displaced by Article 4A. *Sheerbonnet, Ltd.,* 951 F. Supp. at 410; *see also Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89-90 (2d Cir. 2010) (claims that "are not about the mechanics of how a funds transfer was conducted may fall outside" the Article 4A regime); *Patco Const. Co., Inc. v. People's United Bank*, Case No. 09-503, 2011 WL 2174507 at *35 (D. Me. May 27, 2011) (common law causes of action are only "preempted when (i) the circumstances giving rise to the common law claims are specifically covered by the provisions of Article 4A or (ii) the common law claims would create rights, duties, or liabilities inconsistent with the provisions of that article.")

Although Article 4A deals with a transfer of funds to an unintended beneficiary, *see UCC § 4A-205(a)*, it does not appear to expressly address the transfer of funds to an intended beneficiary but to an account at the wrong bank. Moreover, the common law claims in the Complaint are not facially inconsistent with the provisions of Article 4A. As the Complaint has framed the matter, the question is whether HSBC learned of RBS' mistake prior to its asserted set-off of the funds against Awal Bank's debt. The question of notice is at the heart of the matter because Article 4A allows a sender to cancel a previous payment order as long as notice is received by the recipient "at a time and in a manner affording the receiving bank a reasonable opportunity to act on the communication before the bank accepts the payment order." § 4A-211(b).[21] Thus, if HSBC set-off the Wire Transfer before learning of RBS' mistake, the Complaint appears to concede that the payment order was accepted for purposes of the UCC and that the External Administrator's common law claims are preempted by Article 4A. If, however, HSBC had notice that the payment order had been cancelled before it accepted the payment and offset the funds against Awal Bank's indebtedness, then the payment order could not be accepted

---

[21] § 4A-211(b) provides that "a communication by the sender cancelling or amending a payment order is effective to cancel or amend the order if notice of the communication is received at a time and in a manner affording the receiving bank a reasonable opportunity to act on the communication before the bank accepts the payment order."

and the External Administrator's common law claims would not be preempted. *See* § 4A-211(e).[22]

Because we must accept the factual allegations set forth in the External Administrator's Complaint as true for purposes of the motion to dismiss, we must accept the well-pled allegation of the Complaint that HSBC had notice of cancellation of the payment order before the set-off. HSBC denies this, but factual disputes cannot be resolved at this point. The External Administrator has stated a plausible claim for relief, which is consistent with Article 4A of the UCC.

a. *The "Discharge for Value" Rule*

HSBC also argues that the so-called "discharge for value" rule precludes the relief sought by the External Administrator. The discharge for value rule is a common law principle that can be summarized as:

> A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake.

*Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 367, 570 N.E.2d 189, 568 N.Y.S.2d 541 (1991), quoting § 14(a) of the *Restatement (First) of Restitution*. As the rule has been adopted in New York, a creditor can retain erroneously received funds if it accepted such funds "in good faith in the ordinary course of business and for a valuable consideration." *Id.* at 372. Assuming that the doctrine applies here, the External Administrator contends that HSBC could not have accepted and set-off the funds in good faith if it was on notice that RBS had made the payment in error. As discussed, it is hotly contested whether HSBC had knowledge of the mistake prior to its

---

[22] § 4A-211(e) provides that "A canceled payment order cannot be accepted."

set-off, and the External Administrator has alleged that HSBC set-off the transferred funds only after learning that the transferor—RBS—had erroneously transmitted the funds. Obviously, there is a question of fact raised.

In any event, the discharge for value rule is an affirmative defense to be asserted by answer, and a plaintiff "does not bear the burden of raising and refuting this defense in its opening pleadings." *See T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843, 2010 WL 4038826 at *6, n.8 (E.D.N.Y. Oct. 14, 2010). HSBC may raise the defense in due course. On this motion, the External Administrator has alleged sufficient facts in its Complaint to state a plausible claim for relief, and the motion to dismiss the common law counts is denied.

## CONCLUSION

For the reasons set forth above, the External Administrator's motion to file the Debtor's schedules of assets and liabilities, a SOFA and operating reports without the Creditor Claim Information is granted. HSBC's motions to dismiss the chapter 11 case and the adversary proceeding against it are denied. The External Administrator should settle orders on five days' notice.


Dated: New York, New York
       August 4, 2011

                              ___/s/ Allan L. Gropper_____
                              UNITED STATES BANKRUPTCY JUDGE